Miller, J.
In November, 1999, the plaintiff, Marie Guerrier (“Guerrier”), filed a complaint against defendants Christopher Kokoras Insurance Agency, Inc. (“Kokoras”) and Commerce Insurance Company (“Commerce”) claiming, inter alia, that Commerce wrongfully denied coverage under an automobile insurance policy it issued to her and that Kokoras made misrepresentations on insurance application forms that were submitted to Commerce on her behalf. Commerce filed a third party complaint against Kokoras alleging that it made misrepresentations and committed fraud. Kokoras responded with a counterclaim against Commerce alleging that Commerce failed to properly review Guer-rier’s application and driving history.
After trial the court entered judgment in favor of Guerrier against Commerce on Count I (Breach of Contract) and Count DC (Breach of Implied Covenant of Good Faith and Fair Dealing) of the complaint and awarded damages in the amount of $3,228.56, which amount also includes interest and costs.[1] The trial court also found that Commerce violated G.L.C. 93A as alleged in Count VII of the complaint and awarded double damages in the amount of $2,312.99 and attorney’s fees in the amount of $25,000. The trial court dismissed Commerce’s third party complaint and Kokoras’s third party counterclaim.
Commerce appealed and claimed that the court erred by entering judgment for Guerrier in her complaint and against it in its counterclaims and third party claims. Kokoras also appealed and claimed that dismissal of its counterclaim against Commerce was error. However, Kokoras did not pursue its appellate claims. Brief of Appellee Christopher Kokoras Insurance Agency, Inc., p.l, n.1.
*11 FACTS
On November 15, 1996, Guerrier met with Jackie Escobar (“Escobar”), an employee of Kokoras, for the purpose of obtaining motor vehicle insurance. Escobar assisted Guerrier in completing the insurance application, which was then forwarded to Commerce for processing. Kokoras was agent for Commerce pursuant to G.L.c. 175, §113H, a statutory scheme that offers compulsory motor vehicle insurance to those who would otherwise not be eligible to receive it.[2] The section of the application titled “Driver Information” required Guerrier to name and state the date of birth of all people who would be operating the insured motor vehicle. Guerrier is listed as the only driver and her date of birth is indicated as “9-21-49.” The insurance application contains the following notice located above the signature line:
NOTICE: If you or someone else on your behalf knowingly gives us false, deceptive, misleading or incomplete information in this application and if such false, deceptive, misleading or incomplete information increases our risk of loss, we may refuse to pay claims under any or all of the Optional Insurance parts and we may cancel your policy. Such information includes the description and the place of garaging of the vehicle (s) to be insured, the name of operators required to be listed and the answer given above for all listed operators. Check to make certain that you have correctly listed all operators and the completeness of their previous driving records. The Merit Rating Board may verily the accuracy of the previous driving records of all listed operators, including that of the applicant for insurance.
In the course of completing the insurance application, Escobar advised Guerrier that if she was an experienced driver, she would receive a discount in her insurance premium. The application reflects that the date and place that Guerrier first received her driver’s license was “9-21-49 Haiti.” This is the date and place of Guerrier’s birth. Although she lived for some time in Haiti, Guerrier did not receive her driver’s license until 1994, after she had moved to Massachusetts. Escobar completed and Guerrier then signed a document entitled “Out of State Driving Experience, Application for Credit” (“OAS form”), a form which is filed when an insured is seeking a premium credit based on out of state driving experience. On this form, Guerrier represented that she had a driver’s license in Haiti but “doesnt [sic] remember license number.” At the time this form was completed, insurance companies and agents were prohibited by a then existing policy set by the Division of Insurance from requiring applicants to provide proof of an out-of-state license.[3] The OAS form contains a notice provision that is substantially similar to the one disclosed above that was contained in the insurance application. Guerrier testified at trial that although *12 she reads English, she did not read the insurance forms before she signed them. She also testified that she did not represent to Escobar that she had been previously-licensed to drive in Haiti but admitted that she told someone from Kokoras that she had lived in Haiti. Escobar testified that Guerrier told her she had been licensed in Haiti but did not know her license number. Escobar also testified that it was her practice to instruct applicants to read the forms before signing them and that Guerrier did not ask to have any of the forms clarified. Kokoras submitted to Commerce the insurance application, the OAS form and a third form signed by Guerrier indicating that she understood the nature of the insurance coverage explained by Kokoras. During the processing of the application, Commerce noticed that Guerrier’s birth date was also used as the date she first received her license. The date was changed to 9-21-66 (Guerrier’s 17th birthday). Commerce then calculated Guerrier’s experience rating using this altered date. Commerce approved Guerrier’s application, issued insurance to her and charged her a reduced premium reserved for experienced drivers.
In 1997, Guerrier was involved in a motor vehicle accident and sustained property damage loss. She submitted a claim to Commerce and received insurance proceeds. On August 13, 1999, Guerrier’s car was stolen. Guerrier reported the theft to the police and to Kokoras. When the car was recovered a few days later, an investigator from Commerce contacted Guerrier, who, during the conversation, stated that she had never obtained a motor vehicle license in Haiti. On August 25, 1999, Commerce sent a letter to Guerrier stating that it was denying her claim because she misrepresented on her insurance application that she had prior driving experience and had previously been licensed in Haiti since 1966.
Guerrier sent Commerce a demand letter pursuant to Consumer Protection Statute, G.L.c. 93A alleging that denial of her claim is an unfair and deceptive practice. Commerce maintained its denial of coverage. This action ensued.
DISCUSSION
A “misrepresentation in an application of insurance will enable the insurer to avoid the policy if the misrepresentation was made with actual intent to deceive, or it is material.” Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 57 (1997); G.L.c. 175, §186.[4] A “material misrepresentation” is one which would ‘“naturally influence the judgment of [an] underwriter in making the contract at all, or in the estimating the degree and character of the risk, or in fixing the rate of the premium.’” Id. (quoting Employers’ Liab. Assur. Corp. v. Vella, 366 Mass. 651, 655 (1975)); see also Barnstable County Insurance Company v. Gail, 425 Mass. 126, 128 (1997) (“For purposes of G.L.c. 175, §186, a fact is deemed material if it influences the premium.”) The insurer bears the burden of proving that the misrepresentation was material. Id. In the present case, the court based its decision in part on the fact that the increased risk of loss that resulted from the misrepresentation regarding Guerrier’s driving experience had nothing to do with the actual loss suffered by Commerce, i.e., Guer-rier’s motor vehicle accident and stolen vehicle claims. However, misrepresentations that are made on an insurance application are considered a separate and distinct matter from any claim for coverage made by the insured. “Statements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued.” Hanover Ins. Co., at 57 (cites omitted). Here, it is undisputed that Guerrier did not first receive *13 her license until 1994 and was not an experienced driver when she completed the insurance application, and yet the application documents Guerrier signed indicated that she had been a driver for many years. That Guerrier did not read the application documents before she signed is irrelevant, as is her lack of intent to defraud Commerce. Tiffany v. Sturbridge Camping Club, Inc., 32 Mass. App. Ct 173, 175, n.5 (1992) (“In the absence of fraud ... a person who signed a written agreement is bound by its terms whether he reads and understands them or not,”);John Hancock Mutual Life Insurance v. Banerji, 62 Mass. App. Ct. 906, 909 (2004) (“That Banerji claims the representation was not knowingly or mistakenly false is of no consequence in this case because the misrepresentation was material.”) In light of these undisputed facts, Commerce met its burden in showing that a material misrepresentation was made on Guerrier’s application and was entitled to void the policy.
Commerce reasonably relied on the OAS form submitted to it by Kokoras on behalf of Guerrier when it processed Guerrier’s insurance application. When Guerrier informed Commerce that in fact, she had never been licensed in Haiti, Commerce’s reliance on its policy terms denying coverage when a misrepresentation had been made on the application forms was warranted. Thus there was no violation of G.L.c. 93A. White v. American Casualty Insurance Company, 53 Mass App. Ct. 66 (2001). Considering the above, Commerce did not commit any unfair settlement practice in violation of G.L.c. 176D.
In view of our holding in the appeal of the underlying lawsuit, the appeal in the third party case need not be addressed.
CONCLUSION
The judgment in favor of Marie Guerrier is hereby reversed and the complaint is to be dismissed; the judgments dismissing the third party complaint of Commerce Insurance Company and third party counterclaim of Christopher Kokoras Insurance Agency, Inc. and are affirmed.

 Guerrier’s complaint consisted of twenty-two counts, with the same eleven counts brought against each Kokoras and Commerce. At the time of trial, Guerrier’s complaint was reduced to claims of breach of contract (Counts I and II), intentional infliction of emotional distress (Counts V and XVI), violation of G.L.c. 93A (Count VII and XVIII); fraud/deceit (Counts VIII and XIX) and breach of the implied covenant of good faith and fair dealing (Counts IX and XX).

 Under this statutory scheme, applicants for motor vehicle insurance who could not otherwise obtain insurance because they are a very high risk can obtain the compulsory motor vehicle liability insurance that all drivers must obtain. Any resulting expenses and losses from these policies are apportioned among all motor vehicle insurance companies licensed to do business in Massachusetts. Trust Ins. Co. v. Commonwealth Auto. Reinsurers, 46 Mass. App. Ct. 657, 658 (1999) (citations omitted); Southeastern Insurance Agency, Inc. v. Lumbermens Mutual Insurance Company, 423 Mass. 1008, 1009, n.2 (1996). All insurance companies are required by the statute to participate in this program. In addition, the governmental agency administering these policies assigns agents to insurance companies who produce applicants seeking this type of motor vehicle insurance. This is the genesis of the Commerce/Kokoras relationship.

 The Division of Insurance changed this policy in 1999 and insurers and agents are not permitted to request proof of out-of-state licensing. 2000 Massachusetts Private Passenger Automobile Insurance Manual, Rule 65.

 G.L.c. 175, §186 states that:
No oral or written misrepresentation or warranty made in the negotiation of a policy in insurance by the insured or in its behalf shall be deemed material or defeat or avoid the policy or prevent it attaching unless such misrepresentation or warranty is made with actual intent to deceive or unless the matter misrepresented or made a warranty increased the risk of loss.