JULIANA OPARA[1] & another[2] *vs.* MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY & others.[3]

Suffolk. March 1, 2004. - April 23, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Life insurance, Misrepresentation, Lapse for nonpayment of premium.

This court concluded that the plaintiffs, beneficiaries of a life insurance policy, were not entitled to proceeds from that policy, where the insured purchased a single policy that provided whole life coverage but which lapsed for nonpayment of premiums [544-546] and was not validly reinstated by the insured due to several false representations on his reinstatement application [546-547].

CIVIL ACTION commenced in the Superior Court Department on March 30, 1999.

The case was heard by *Geraldine S. Hines,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard J. Fallon* for the plaintiffs.

*Edward S. Rooney, Jr. (John A. O'Neil* with him) for Massachusetts Mutual Life Insurance Company & another.

*Jeffrey R. Martin* for Peter Opara.

MARSHALL, C.J. Nearly one century ago, this court determined that the requirements currently contained in G. L. c. 175, §§ 131 and 132 (3) — which essentially prevent insurers from denying coverage based on alleged misrepresentations in an application for life insurance unless that application was attached to the

---

[1]Individually and as parent and next friend of Trust Opara, Praise Opara, Believe Opara, and Rejoice Opara.

[2]Tyndale Opara, trustee of the Duziem Opara Irrevocable Life Insurance Trust.

[3]Peter Opara and Stephen C. Berlin.

policy when issued — do not apply to applications to reinstate a lapsed life insurance policy. *Holden* v. *Metropolitan Life Ins. Co.*, 188 Mass. 212 (1905). That same principle — in force and relied on by insurers for decades and unchanged by the Legislature despite years of consumer-oriented regulation in a highly regulated industry — dictates the outcome of this case.

The plaintiffs are beneficiaries of a life insurance policy purchased by Duziem Opara, who died after a brief battle with cancer. The defendants are the insurer, Massachusetts Mutual Life Insurance Company (MassMutual), and its former agents, Peter Opara[4] and Stephen Berlin. MassMutual denied the initial claim made by the insured's wife against the $1 million policy, citing alleged material misrepresentations made in a reinstatement application. The beneficiaries then filed a complaint in the Superior Court seeking the proceeds of the policy from MassMutual, in addition to damages pursuant to G. L. c. 93A and G. L. c. 176D for alleged unfair settlement practices. The beneficiaries also asserted negligence and contract claims against the two former MassMutual agents. After discovery, all three defendants moved for summary judgment. A judge in the Superior Court allowed the motions and the beneficiaries appealed.[5] We transferred the case from the Appeals Court on our own motion.

1. *Background.* We summarize the undisputed facts.

(a) *The insurance policy and its lapse.* In September, 1995, Duziem Opara submitted an application to MassMutual for a $1 million policy of whole life insurance. Peter Opara solicited the application on behalf of MassMutual and was the agent of record on the policy. Stephen Berlin was the former general agent for MassMutual in Boston. He had a contractual relationship with Peter Opara that authorized Peter to solicit applications for MassMutual policies.

MassMutual approved Duziem's application and issued policy

---

[4]Although they shared the same surname, Duziem Opara and Peter Opara were not related. To avoid confusion from time to time we refer to each by their first name.

[5]The Appeals Court allowed the beneficiaries' motion to amend the notice of appeal, permitting them to name all the beneficiaries individually in the amended notice.

number 9653286 to him, effective October, 1995.[6] The annual premium of the policy was $29,160, payable in monthly installments of $2,536.92. Duziem made the first three monthly payments, but stopped making payments in January, 1996. Pursuant to the terms of the policy, the policy lapsed without value at the end of a thirty-one day grace period. In April, 1996, MassMutual sent Duziem notice of the lapse.

(b) *The insured's medical treatment.* In early 1996, Duziem was experiencing stomach upset, nausea, and bloating. In March, 1996, he reported these symptoms to his physician, Dr. Hildred Pennoyer. She recommended that he take an over-the-counter antacid and contact her again if there was no improvement or if the symptoms returned.

In June, 1996, Duziem contacted Dr. Pennoyer again, reporting that he had recently experienced stomach upset, pain, and nausea after a stressful incident while driving. Dr. Pennoyer scheduled an appointment with Duziem to reevaluate his symptoms. After the appointment, Dr. Pennoyer advised Duziem to use a different over-the-counter medication, and also referred him to a gastroenterologist, Dr. Charles Buzanis.

Duziem met with Dr. Buzanis in July, 1996. During his examination, Dr. Buzanis discovered a "palpable" section of what he believed was Duziem's colon and recommended a colonoscopy. The colonoscopy was performed in August, 1996, and the results were normal. However, because Duziem was still experiencing discomfort, Dr. Buzanis suggested that he undergo further testing. An upper gastrointestinal series was conducted in September, 1996, and the results again were normal.

Duziem, however, was still experiencing abdominal pain. Because Dr. Buzanis continued to be concerned with the palpably tender area of Duziem's abdomen, he ordered a CT scan. The scan was conducted on October 3, 1996. It revealed a large, ten centimeter lobulated mass in Duziem's small bowel, which the radiologist believed likely represented a sarcoma with associated liver metastases. On October 10, 1996, Duziem

---

[6]The record does not include a copy of the original whole life policy. MassMutual does not contend that there was any misrepresentation in the original application.

underwent a needle biopsy, which confirmed that the mass was cancerous. The notes taken by Duziem's oncologist indicate that Duziem was told that he had approximately nine months to live.

(c) *Reinstatement of the insurance policy.* On October 17, 1996, Peter Opara telephoned MassMutual to ask what the company would require to reinstate Duziem's whole life insurance policy by redate.[7] Two weeks later, MassMutual received a handwritten memorandum from Peter, dated November 1, 1996, stating, "Please note, request is to reinstate and redate policy currently. All relevant documents have been forwarded . . . ." Enclosed with the memorandum were the following documents: part 1 of an application to reinstate Duziem's whole life policy, dated October 19, 1996; part 2 of the application to reinstate the policy, indicating that it was signed "on" October, 1996[8]; a conditional receipt, dated October 19, 1996; and an authorization form, also dated October 19, 1996.

Part 2 of the reinstatement application form included a series of questions concerning Duziem's prior medical history. For example, the form required Duziem to indicate whether he had "ever been advised of, treated for, or had any known indication of," among other things, recurrent indigestion, stomach disorder, intestinal disorder, or cancer. Next to each of these questions, Duziem checked the box labeled "None of These." Similarly, the form required Duziem to indicate whether he had, in the last five years:

"a. Had any medical or physical disorder?

"b. Had a consultation, surgery, or injury requiring treatment by a physician, hospital or other medical facility? . . .

"d. Been advised to have medical treatment, diagnostic tests, hospitalization or surgery which was not

---

[7]A MassMutual employee explained in her deposition testimony that a policy could be "reinstated by redate," that is, the "pay-to-date" could be advanced to reduce the total amount of back premiums an insured would have to pay before the policy could be reinstated.

[8]There was no reference in the application to a specific day in October, 1996, on which the document was "signed."

completed; or are you now planning to seek such advice or treatment?

"e. Been, or are you currently, under treatment or taking any medication?"

Next to each of these and other similar questions, Duziem checked the box marked "No."

A few days after MassMutual received the reinstatement application, it received a client services transmittal form, dated November 8, 1996, from Peter. The form included a reference to Duziem and his whole life policy number, and contained a handwritten note stating, "Please change plan to term insurance for $1,000,000 coverage." MassMutual also apparently received a request for amendment of contract, completed by Duziem, again asking that the policy be changed from whole life to term life coverage.

After reviewing Duziem's application for reinstatement, and after soliciting additional medical information from Duziem, which he supplied, MassMutual approved it on November 21, 1996. After the policy was reinstated and redated, the requested amendment of the policy from whole life coverage to term life coverage was also approved.[9] MassMutual sent Duziem a copy of the term insurance policy, bearing the same policy number as his whole life policy. Attached to the policy was a copy of Duziem's original application for whole life insurance. Mass-Mutual did not attach a copy of Duziem's reinstatement application to the policy. The monthly premium for the term life coverage was $284.56. The much larger monthly premiums that Duziem had paid under the terms of the whole life policy (i.e. $2,536.92) were applied to the term life policy, allowing Duziem to avoid paying monthly premiums on the term life policy for one full year until August, 1997. Duziem did not surrender the whole life policy.

(d) *The claim.* In early November, 1996, Duziem underwent surgery to remove the tumor from his intestine. Despite

---

[9]The record does not reflect a separate date for approval of the change from whole to term life coverage. A MassMutual employee explained in deposition testimony that it was impossible under company policy to reinstate by redate and convert to term coverage at the same time.

chemotherapy and radiation therapy, his condition worsened. He died on March 21, 1998.

In May, 1998, Juliana Opara submitted a claim to Mass-Mutual to receive the $1 million death benefit under Duziem's term life policy. After investigating the claim, MassMutual denied it based on the alleged misrepresentations contained in the October, 1996, reinstatement application.

2. *Standard of review.* Summary judgment is appropriate where there is no genuine issue of material fact, and where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974); *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 120 (1991). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

3. *Contract claim against MassMutual.* This appeal turns on a single question: Did Duziem purchase a single life insurance policy from MassMutual, or two separate and distinct policies? If he purchased one policy of insurance, which was reinstated after lapse, and then amended or "converted" to change several critical terms, then MassMutual may rely on the alleged misrepresentations in Duziem's reinstatement application to deny his beneficiaries' claims. See *Reidy* v. *John Hancock Mut. Life Ins. Co.*, 245 Mass. 373, 376 (1923) (considering precursor to G. L. c. 175, § 124, requiring insurer to prove that alleged misrepresentations were wilfully false, fraudulent, or misleading, court held that statute did not apply to representations made in reinstatement applications because "[i]t was not a new contract which the insured was negotiating, but the revival of a contract under the conditions prescribed by the company and accepted by him"); *Holden* v. *Metropolitan Life Ins. Co.*, 188 Mass. 212, 214 (1905) (considering precursor to G. L. c. 175, § 131, requiring applications to be attached to policies, court

held "[t]he language of the statute plainly has reference to an application upon which the original policy is issued, and not to any contract of revival").

If Duziem purchased two insurance policies, a whole life policy that he permitted to lapse and a separate term life policy that was in effect when he died, then MassMutual may not rely on the alleged misrepresentations to deny the claim. See G. L. c. 175, § 131 ("Unless a correct copy of the application is endorsed upon or attached to a policy of life or endowment insurance, when issued, the application shall not be considered a part of the policy or received in evidence for any purpose . . .").

It is undisputed that Duziem originally purchased a single policy that provided whole life coverage. When that policy lapsed for nonpayment of premiums, Duziem applied for reinstatement. He also requested that his policy be redated. A few days later, he requested that his policy be changed from whole life coverage to term life coverage. His requests were handled in the order in which they were received. First, MassMutual approved the reinstatement of the whole life policy based on the representations made in Duziem's reinstatement application.[10] It also approved the redating of the whole life policy, which a MassMutual employee explained would allow Duziem to reinstate the policy without paying back premiums. Then MassMutual approved the requested change in policy terms, converting the coverage from whole life to term life. See note 9, *supra.* It applied the premiums Duziem had paid toward whole life coverage to the much smaller premiums due for the converted term life coverage. It then sent Duziem a copy of the policy with its new terms, using the same policy number and attaching a copy of his original application for whole life coverage. Duziem did not surrender his original whole life insurance policy.

All of these actions are consistent with the purchase of a

---

[10]The conditional receipt signed by Duziem explicitly stated that a condition of reinstatement was that, "[o]n the date of this receipt, all answers and statements in any part of the application having an earlier date are complete and true as though given on the date of this receipt." The receipt further warned that, if this condition was not met, "the insurance shall not become effective."

single insurance policy that was revived after lapse and amended to change a significant term. The policy number stayed the same. The premiums were applied from one policy to the other. Both versions of the policy were issued based on the same application, Duziem's original whole life application submitted in 1995. By contrast, none of these actions is consistent with the purchase of two separate insurance polices. Duziem did not surrender his first policy. He did not submit a new application for insurance. Nor did he separately pay for the term life insurance coverage. Given these undisputed facts, the Superior Court judge correctly concluded that this case is controlled by *Holden* v. *Metropolitan Life Ins. Co.*, *supra*, and *Reidy* v. *John Hancock Mut. Life Ins. Co.*, *supra*, and that MassMutual is entitled to rely on Duziem's alleged misrepresentations in his reinstatement application to deny coverage.

This conclusion leads us to the next question, whether the judge was correct in determining that the statements Duziem made in his reinstatement application were false and rendered the reinstatement of his policy ineffective. The beneficiaries claim that the statements were true when the application was signed, which they allege was in early 1996, when Duziem first asked Peter Opara about changing his whole life coverage to significantly less expensive term life coverage. Their theory is that Duziem signed an undated reinstatement application some time in early 1996, which Peter failed to submit to MassMutual until October, 1996. They claim Peter "was hoping to convince the Insured to return to a whole life policy," for which he would receive a substantial commission.

The only evidence cited to support this theory is Juliana Opara's affidavit, which states: "I know my husband did not sign an application on October 19, 1996, since my husband and I were at home the entire weekend, including Saturday, October 19, 1996, as we had just been told the news by the doctor of my husband's condition, and we wanted to decide how to give the news to the children first."[11] But even if we were to assume that Duziem did in fact sign (but not date) the reinstatement ap-

---

[11]The beneficiaries also note that part 1 of the reinstatement application indicates that it was signed "at Westwood, MA" where Duziem lived, and part 2 as well as the conditional receipt were signed at "Roslindale, MA" where

plication in early 1996, several of his representations remain false as of that time. Specifically, Duziem stated in the application that he last saw his personal physician, Dr. Pennoyer, in February or March, 1996.[12] Thus, the application must have been completed some time after Duziem began experiencing the nausea, abdominal pain, and bloating that he reported to Dr. Pennoyer in March, 1996. Yet the application states that the reason Duziem saw Dr. Pennoyer was for a "routine physical," and that he received no medication or treatment.[13] Duziem also represented in the application that he had "[never] been advised of, treated for, or had any known indication of" any stomach or intestinal disorder. Duziem certainly had at least a "known indication" that he was experiencing a stomach or intestinal disorder at the time he sought and obtained treatment from Dr. Pennoyer. Thus, regardless of precisely when the application was signed, Duziem failed to satisfy one of the conditions precedent for the reinstatement of his life insurance policy: that all of the answers and statements in his application were complete and true.[14] See note 10, *supra.*

Finally, the beneficiaries claim that, even if there was only one insurance policy and Duziem's statements in the reinstatement application were false, the policy was incontestable at the time of Duziem's death because more than two years had passed since it was originally issued. See G. L. c. 175, § 132 (2) (requiring insurance policies to include provision that "the

Duziem worked. The beneficiaries claim that it would be unlikely that Duziem would have signed anything at his office in Roslindale on October 19, 1996, given Juliana's affidavit statement. However, Duziem was given his diagnosis on October 10, 1996, nine days before the documents were allegedly signed. It does not seem unlikely that Duziem would begin attempting to put his affairs in order more than one week after he was informed that he had a terminal illness.

[12]The fact the Duziem apparently could not recall the precise date or month of his appointment with Dr. Pennoyer strongly suggests that the application was signed some significant period after that appointment in March, 1996.

[13]The plaintiffs have not claimed that Duziem saw Dr. Pennoyer on two occasions in March, 1996.

[14]Although the beneficiaries do not press the issue on appeal, we note that our conclusion with regard to the contract claim is also dispositive of their claims pursuant to G. L. c. 93A and G. L. c. 176D for alleged unfair settlement practices. If the term life coverage was never effective, then it was necessarily proper for MassMutual to deny that coverage.

policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue"). That is not the law where an insurance policy has lapsed for nonpayment of premiums and been reinstated. See *Umans* v. *New York Life Ins. Co.*, 259 Mass. 573 (1927) (in similar circumstances, court determined that policy was never reinstated due to insured's false statements on reinstatement application despite existence of incontestability clause and fact that more than two years had passed since policy was first issued when insured died). See also *New York Life Ins. Co.* v. *Woods*, 19 F. Supp. 468, 469 (D. Mass. 1937) (applying Massachusetts law and concluding that when "insurance was reinstated under the provisions of the policy, the incontestibility clause commenced to run again from the date of reinstatement").[15]

4. *Negligence and contract claims.* The beneficiaries do not seriously contest the judge's allowance of the summary judgment motion filed by MassMutual's two former agents, Peter Opara and Stephen Berlin. They acknowledge that their claims — based, among other things, on the agents' alleged failure to inform Duziem of a second alleged policy lapse in 1997 — "only come into play if the Adjustable Term Policy was not in effect at Insured's death" due to the second alleged lapse. But that issue is not relevant. As the judge determined, Duziem failed to satisfy a condition precedent to the reinstatement of his policy: i.e., complete and truthful responses on his application concerning the state of his health. The insurance coverage under the term life policy was never effective.

*Judgment affirmed.*

---

[15]The beneficiaries also claim that, because MassMutual did not require Duziem to undergo a doctor's examination before reinstating his policy, then it must establish that his representations in the reinstatement application were "wilfully false, fraudulent or misleading." G. L. c. 175, § 124. However, that statute applies to policies "issued" without previous medical examination. Here, the policy did not "issue" when it was reinstated. Moreover, there can be virtually no question that the statements were, at the very least, "wilfully . . . misleading."