JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY & another[1] *vs.* JULIAN BANERJI. No. 01-P-722. October 6, 2004. *Insurance,* Disability insurance, Misrepresentation. *Contract,* Insurance, Misrepresentation.

John Hancock Mutual Life Insurance Company sought a judgment against its insured, Julian Banerji, declaring that it did not have to pay him future earnings protection (FEP) benefits under his disability policy because he had made a material misrepresentation in his application for those benefits. After a bench trial, a Superior Court judge concluded that Hancock violated the policy by refusing to pay Banerji the FEP benefits, and ordered Hancock to pay. The judge denied Banerji damages under G. L. c. 93A and G. L. c. 176D, as well as attorney's fees. Both parties appealed.

1. *Facts.* Banerji submitted his original application for an individual disability policy in 1990. When Hancock issued the policy, it attached a copy of Banerji's application. One of the provisions of the policy (the FEP provision) allowed a policyholder to apply for expanded monthly benefits as his annual income increased, and in 1993 Banerji sought such expanded coverage.[2] Because Hancock, as is typical of disability insurers (see 12 Couch, Insurance § 182:31 [3d ed. 1998]), sought to avoid allowing its policyholders to become

---

[1]Provident Life & Accident Insurance Company, which acquired John Hancock's individual disability insurance line in 1992.

[2]Banerji's income at the time he applied for the original disability policy was $25,000 per year. Thereafter he was offered employment by a young and growing biotechnology company at a salary of $47,000 per year, and at the time he applied for the FEP benefit, after two pay increases, his salary had grown to $57,000.

overinsured,[3] the FEP application form requested information relating to the existence of other disability income insurance. Banerji answered that he had no applicable coverage other than his Hancock policy. Hancock approved Banerji's application for the FEP benefit and sent him an "addendum page," or rider, to be attached to the underlying policy. Hancock did not attach to the addendum page a copy of Banerji's application for the FEP benefit, nor did it require Banerji to return the policy to Hancock so that Hancock could attach the application for the FEP benefits to the policy.

Banerji suffered a stroke in 1991, which left him partially disabled, but he did not apply for disability benefits because his employer did not reduce his pay during his period of recovery. On August 19, 1994, his employer terminated his employment, citing bad attitude and frequent unexplained absences. Shortly thereafter, Banerji filed a claim for disability benefits from Hancock. Following an investigation, Hancock paid disability benefits under the original policy ($1,500 per month), but denied FEP benefits (which would have amounted to an additional $1,550 per month). Hancock's investigation had disclosed that, contrary to Banerji's answer in the FEP application, he had group disability insurance coverage provided by his employer, amounting to sixty percent of his income. It is undisputed that if that information had been disclosed to Hancock, Banerji would not have qualified for the FEP benefits.[4]

2. *Discussion.* Massachusetts law contemplates that a copy of the insurance policy application will be attached to the insurance policy when it is issued. See G. L. c. 175, §§ 108(5)(*a*), 131. The purpose of those statutes is to afford the applicant "the opportunity to correct material errors in the application," Meyer, Life & Health Insurance Law § 6:8, at 167 (1972); *id.* at § 6:9 (Supp. 2003); see 3 Holmes, Appleman on Insurance § 15.1 (2d ed. 1998), and to secure the insurer's right to rely on misrepresentations to rescind the policy, 2 Couch, Insurance § 18:6 (3d ed. 1995). Failure to attach the application bars the insurer from relying on false answers in the application in a rescission action. See G. L. c. 175, § 108(5)(*a*); 2 Couch, *supra.* See also *Schiller* v. *Metropolitan Life Ins. Co.,* 295 Mass. 169, 173 (1936); *Pahigian* v. *Manufacturers' Life Ins. Co.,* 349 Mass. 78, 84 (1965).

The attachment statutes on their face apply only to the original policy issuance; the requirement that the application be attached does not apply to applications for reinstatement or revival of an insurance policy. See, e.g., *Opara* v. *Massachusetts Mut. Life Ins. Co.,* 441 Mass. 539, 545-546 (2004).

---

[3]A policyholder is overinsured if he would profit by being disabled, that is, if his disability benefits would provide him with a higher net income than his earnings when working, thus giving him an incentive to remain disabled. To avoid the risk of overinsurance, disability insurers set an internal underwriting guideline, or "participation" percentage representing the maximum coverage they will write, so as to take account of, e.g., the nontaxability of disability payments, see 4 Couch, Insurance § 63.24 (3d ed. 1997), possible income from other sources, and expenses ancillary to working, such as commuting. Hancock's participation percentage varied from sixty to eighty percent depending on income (higher incomes had lower participation rates).

[4]At the biotechnology company, Banerji was covered by a group disability policy for sixty percent of his income, which, added to his coverage under both the original Hancock policy ($18,000 per year) and the FEP benefit ($18,600 per year), gave him potential coverage of $70,800 per year, substantially in excess of both Hancock's participation percentage and Banerji's actual salary.

Compare *Holden* v. *Metropolitan Life Ins. Co.*, 188 Mass. 212, 214 (1905) (referring to precursor to G. L. c. 175, § 131, statute "plainly has reference to an application upon which the original policy is issued").

For purposes of determining the applicability of § 108(5)(*a*), the pivotal question in this case is thus indistinguishable from that in *Opara*: to paraphrase that case, did Banerji purchase a single disability insurance policy from Hancock, or two separate and distinct policies? If he purchased one policy of insurance, which was merely supplemented by the "addendum page," then Hancock may rely on the misrepresentation in Banerji's FEP application to deny his FEP claim for benefits. See *Opara* v. *Massachusetts Mut. Life Ins. Co.*, 441 Mass. at 544. If, on the other hand, the FEP "addendum page" constituted the issuance of a new and distinct policy, § 108(5)(*a*) would bar Hancock from relying on the misrepresentation that was critical to issuance of the FEP supplemental benefit.

The FEP "addendum page" was not a new and distinct policy. Policies typically have numbers; no new policy number attached to the FEP "addendum page," *Opara, supra* at 546, and no new policy was issued, only an addendum page to be attached to the underlying policy. The FEP benefit, i.e., the opportunity to raise coverage as the insured's income grew, was a contract provision of the underlying policy, available only to an insured under such a policy, not to the general public. Unlike the application Banerji was required to fill out when applying for the underlying disability policy, which required extensive information about his lifestyle and medical history, the FEP application sought no medical information other than whether Banerji was presently disabled.[5] The very paucity of the FEP application made clear that only two factors were central to issuance of the FEP benefit: first, that Banerji's income had doubled since the issuance of the original policy and, second, that he had no available disability coverage in place or contemplated (i.e., applied for) other than his Hancock coverage. Hancock was thus not required by statute to attach the FEP benefit application to the policy in order to rely on it in rescission.

An examination of the contract as a whole shows that there was also no contractual requirement that Hancock attach the FEP application to the original policy. There are several places in the insurance contract where attachment language is used with reference to the original application, while no attachment language is used in connection with the FEP application. For example, the policy states that "[a] copy of your application *is attached* and is a part of this policy" (emphasis added). The original policy states that future FEP requests "will become a part of this policy." Another example of the different treatment is the contract's discussion of the two-year period after which misrepresentations in the application become incontestable. With respect to misrepresentations in the original application, the policy states that Hancock cannot "contest any statements in the application *which is attached* to this policy" (emphasis added). With respect to the FEP application, no reference to attachment is used in the two-year incontestability provision. Clearly, Hancock differentiated between the applications in its contract, presumably

---

[5]Banerji answered "no," although the application was signed and submitted after his 1991 stroke. Hancock does not rely on this answer, presumably because Banerji was at the time still working (with altered duties) at full salary.

because the statute only called for attachment of the original application for the underlying policy, and because attachment of the supplemental FEP application would entail a possibly cumbersome return of the underlying policy to Hancock.

Because neither the statute nor the provisions of the contract require Hancock to attach the FEP application to the original policy, its failure to do so will not prevent it from relying on Banerji's misrepresentation to rescind the FEP portion of the policy. Rescission, whether governed by G. L. c. 175, § 108(5)(*c*), or § 186, reflects long-standing common-law principles. See *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. 126, 128 (1997).

Massachusetts common law has long instructed that a party "seasonably may rescind a contract which he has been induced to enter into in reliance upon false and fraudulent representations as to material facts." *Elias Bros. Restaurants, Inc.* v. *Acorn Enterprises, Inc.*, 831 F. Supp. 920, 927 (D. Mass. 1993), quoting from *McGrath* v. *C.T. Sherer Co.*, 291 Mass. 35, 58 (1935). Contracts induced by fraudulent misrepresentations are not void ab initio; they are voidable at the election of the party who justifiably relied on the misrepresentations. *Shaw's Supermarkets, Inc.* v. *Delgiacco*, 410 Mass. 840, 842 (1991). See *Berenson* v. *French*, 262 Mass. 247, 260-261 (1928); Restatement (Second) of Contracts § 164 (1981). Intent to deceive is not required, but a nonfraudulent misrepresentation does not make a contract voidable unless the misrepresentation is material. Restatement (Second) of Contracts § 164 and comment b (1981). These rules apply in the insurance context as G. L. c. 175, § 186, makes clear. See, e.g., *Shaw* v. *Commercial Ins. Co.*, 359 Mass. 601, 607 (1971) (no need to decide whether there was "actual intent to deceive" because applicant's answer to question "increased the risk of loss"). See also *Employer's Liab. Assur. Corp.* v. *Vella*, 366 Mass. 651, 655 (1975) (material misrepresentation by applicant may void insurance policy, relying on G. L. c. 175, § 186); *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. at 128 (same).

"For purposes of G. L. c. 175, § 186, a fact is deemed material if it influences the premium. 'A fact "must be regarded as material, the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of premium." ' *Employers' Liab. Assur. Corp.* v. *Vella, supra* at 655, quoting *Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush. 416, 425 (1853)." *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. at 128. Here, there is no dispute that Banerji misrepresented on his application for FEP benefits that he had no other insurance coverage. There is also no dispute that such information was material to Hancock's calculation of its participation percentage. That Banerji claims the representation was not knowingly or mistakenly false is of no consequence in this case because the misrepresentation was material. Thus, the contract for FEP benefits was voidable by Hancock.

Our decision on this point obviates the need to address Banerji's appeal of the judge's denial of his claims for attorney's fees, the present value of future benefits, emotional distress damages, and liability under G. L. c. 93A.

The judgment is amended by striking paragraphs one through four, and by inserting in place thereof a declaration that Hancock is awarded rescission of

the FEP benefit, subject to return to Banerji of the portion of the premium paid for that benefit. The judgment is otherwise affirmed.

*So ordered.*

*Robert J. Gilbert* (*Jeffrey B. Renton* with him) for the defendant.
*Edward S. Rooney, Jr.,* for the plaintiffs.

V.H. *vs.* J.P.H. & another.[1] No. 04-P-150. October 7, 2004. *Attorney at Law,* Withdrawal.