McCann, John S., J.
INTRODUCTION
The case at bar arises out of a covenant not to compete that the plaintiff, Genuine Parts Company (“GPC”), and the individual defendant Edward Allard (“Allard”), entered into upon the sale of Allard’s motor vehicle parts business to GPC, subsequent to which sale Allard was employed by GPC. Allard and Autopart International, Inc. (“Autopart”), Allard’s employer (collectively “the defendants”), represented by Owen Gallagher, now move for summary judgment, requesting declaratory judgment with respect to the enforceability of the covenant not to compete and judgment in their favor on all four counts of GPC’s complaint. GPC, represented by C. Alexa Abowitz, moves for summary judgment on the defendants’ abuse of process counterclaim. For the reasons stated below, the covenant not to compete "will be modified and both motions for summary judgment will be ALLOWED.
BACKGROUND
The undisputed material facts and the genuinely disputed material facts in the light most favorable to the non-moving party are as follows.
In 1993, Allard began doing business as Brakemas-ter, Inc. (“Brakemaster”). For the next twelve years, Allard owned and operated Brakemaster, a motor vehicle parts distributor. By 2005, Brakemaster had two locations in the Worcester area, one at 97 Temple Street, Worcester, Massachusetts, 01604, and one at 184-186 West Boylston Street, West Boylston, Massachusetts, 01583 (“the Brakemaster stores”).
Allard approached GPC in the fall of 2004 expressing interest in selling the Brakemaster stores. During that same time period Allard was approached by another party interested in purchasing the Brakemaster stores. After negotiations, the nature of which is disputed, on May 26, 2005, Allard and GPC entered into the asset purchase agreement and the covenant not to compete, attached to the complaint as exhibits one and two. GPC drafted the asset purchase agreement and the covenant not to compete. At the time of the contract negotiations and closing, GPC was represented by counsel and had entered into contracts for the purchase of privately owned motor vehicle parts distribution stores before. It was GPC’s practice to require the seller of a business to enter into a covenant not to compete at the time of the sale. It was not GPC’s practice to require all sales persons to enter into a covenant not to compete. During the course of the contract negotiations and at the time of the closing, Allard was not represented by counsel, although he had consulted with an attorney with respect to some aspects of these contracts.
Pursuant to the asset purchase agreement, GPC took control of the Brakemaster stores on June 1, 2005. The purchase price was based on a calculation of the value of the non-obsolete and saleable NAPA (National Automotive Parts Association) inventory, the usable furniture fixtures, equipment and other items of property, the vehicles used in the Brakemaster stores, the usable shop equipment, and the undisputed, reconciled, and collectable current to sixty days accounts receivable. The agreement provided: if “accounts receivable purchased and collected by [GPC] *22 by September 1, 2005, are less than the 75% of the amount of the current accounts receivable paid by [GPC] at the Closing, then [Allard] shall pay to [GPC] . . . the amount of the deficiency, and [GPC] shall then assign to [Allard] those accounts receivable which remain open, outstanding and uncollected. After September 1, 2005, any payments received by [GPC] that are clearly payment of accounts receivable generated before June 1, 2005, shall be promptly forwarded to [Allard].” The asset purchase agreement did not mention the sale of the Brakemaster stores’ good will.
The covenant not to compete was effective June 1, 2005. The covenant stated that it became effective in contemplation of the closing of the asset purchase agreement. At some point prior to entering into the covenant not to compete, Allard and GPC discussed GPC paying Allard in consideration of his signing the covenant not to compete or in consideration of the transfer of the Brakemaster stores’ good will. Just before May 26, 2005, GPC told Allard that in return for his entering into the covenant not to compete Allard would receive guaranteed employment with GPC. In summary, the covenant not to compete provided that for a period of ten years Allard would not, within Brakemaster’s May 2005 customer base or within a twenly-mile radius of the Brakemaster stores, engage in or have any ownership interest in a business that engages in the sale of motor vehicle parts; solicit business relating to the retail sale of motor vehicle parts; divulge or disclose trade secrets, customer lists, or other information regarding the Brakemaster stores; divert, diminish, or prejudice GPC’s good will; or urge any person or entity to discontinue business with GPC.
After the closing of the asset purchase agreement, Allard was employed by GPC as a sales person. In the fall of 2005, Todd Patkin, an employee of Autopart, contacted Allard to discuss the possibility of Allard coming to work for Autopart. Patkin had heard from Allard’s son that Allard was unhappy at GPC. In or around October 2005, Allard discussed with Patkin the possibility of his leaving GPC for employment with Autopart. At this time, Allard informed Autopart that he had entered into a covenant not to compete. Allard also disclosed that he was unhappy with GPC because he believed that GPC had not paid him enough for the Brakemaster stores and that he did not believe GPC to be an honorable company.
On October 14, 2005, Allard left GPC for a position with Autopart. Autopart assigned Allard to work with Mike Costello, the “key accounts manager” and a sales person in the Worcester region. Allard worked with Costello in his role as key accounts manager and their task was to grow Autopart’s share of the domestic automobile parts market. Autopart was aware of the nature of Allard’s covenant not to compete and Allard was not assigned to be a sales person in the Worcester region. In the course of Allard’s training with Costello, however, Allard was with Costello as Costello did business in the Worcester area, including one visit to a GPC customer, Sainsbuiy & O’Connell (“S&O”), discussed in further detail below.
Between October 14, 2005, and December 8, 2005, Allard had contact with former customers of the Brakemaster stores, who were at that time GPC’s customers, including, but not limited to, L&L Certified Auto Service (“L&L”), S&O, and David Ramstrom Service, also known as Jerry’s Auto Service (“Jerry’s Auto Service”).
On one occasion, Allard patronized L&L for a tire repair on a vehicle owned by Autopart. There were, however, no markers on the vehicle identifying it as being owned by Autopart. In an affidavit signed on December 14, 2005, Keith Leo, the owner of L&L, testified:
Over the last two months Mr. Allard has visited my shop three or four times, either concerning work on his car or simply to say hello. Although I am aware that Mr. Allard is now a salesman for Autopart International, none of these visits have involved the sale of Autopart International parts, and Mr. Allard has not solicited or attempted to solicit business from L&L on behalf of Autopart International, nor has he said or done anything to urge me to buy parts or not buy parts from any vendor.
Allard visited S&O several times in the fall of 2005. Bob Sainsbuiy, an owner of S&O, attested in an affidavit signed on December 15, 2005, that he and Allard were good friends and that Allard’s visits to S&O during the fall of2005 were for the purpose of discussing an old account receivable that GPC claimed S&O had not paid. During at least one of these visits, Allard was with Costello and Costello was conducting Autop-art business with another member of the S&O staff while Allard spoke separately with Sainsbuiy. Sainsbuiy further stated: “At no time during any visit to my shop or in any conversation I have had with him has Mr. Allard solicited me in regard to Autopart International parts or attempted to sell Autopart International parts, nor has he said or done anything to urge me to buy parts or not buy parts from any vendor.”
Allard visited Jerry’s Auto Service on several occasions in the fall of 2005 during which visits he discussed a waste oil heater that he had sold to Jerry Brooks, the owner of Jeriy’s Auto Service. Brooks, in an affidavit dated December 14, 2005, stated: “At no time during any of these visits has Mr. Allard in any way solicited me or attempted to sell anything on behalf of Autopart International, nor has he said or done anything to urge me to buy parts or not buy parts from any vendor.” Allard also met with employees of two other former Brakemaster store customers and current GPC customers after leaving GPC. Allard testified that these interactions were social in nature.
*23 On November 22, 2005, GPC sent a letter to Allard stating that his employment with Autopart was in violation of the covenant not to compete. In the letter, GPC demanded that Allard cease and desist his employment with Autopart. On December 1, 2005, GPC sent a similar letter to Autopart, in which it again stated that Allard’s employment was in breach of his covenant not to compete. GPC also stated that it would take legal action against Autopart. On that same day, GPC again sent a letter to Allard demanding that he terminate his employment with Autopart and stating that GPC would take legal action if he failed to do so. For the purposes of summary judgment, GPC does not dispute that the covenant not to compete does not prevent Allard from working for a competitor of GPC, provided he does so outside of the geographic scope set forth in the covenant and does not use the skills he developed over the years.
DISCUSSION
I. Defendants’ Motion for Declaratory Relief and Summary Judgment
A. Enforcability of Covenant Not to Compete
To successfully enforce a covenant not to compete, the plaintiff has the burden to prove that the agreement is supported by valid consideration, protects a legitimate business interest, is reasonable in time and scope, and is consistent with the public interest. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 498, 501 (1986). A covenant not to compete ancillary to the sale of a business or in anticipation of an employment relationship “will be enforced if it is reasonable, based on all the circumstances.” All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
Here, the agreement is supported by valid consideration as it was ancillary to Allard’s sale of the Brakemaster stores to GPC, see covenant (stating that the covenant was entered into “in consideration of the mutual covenants and agreements made within a said Asset Purchase Agreement and as an inducement for Purchaser to enter into said Asset Purchase Agreement”); and was followed immediately by Allard’s employment with GPC, see Alexander & Alexander, Inc., 21 Mass.App.Ct. at 495-96; and Slade Gorton & Co. v. O’Neil, 355 Mass. 4, 9 (1968). The covenant not to compete protects GPC’s legitimate business interests, in particular, GPC’s interest in its good will, including that which it acquired when it took over the operation of the Brakemaster stores pursuant to the asset purchase agreement, see Alexander & Alexander, Inc., 21 Mass.App.Ct. at 496 (“agreement by the seller not to depreciate the value of good will may be implied so as to prevent the seller from taking back that which he purported to sell"); and GPC’s interest in trade secrets and customer lists. See Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287-89 (1974). This court is, therefore, left to consider whether the covenant not to compete is reasonable in time and scope and whether it is consistent with public policy.
In general, to determine “whether a covenant will be enforced, in whole or in part, the reasonable needs of the former employer for protecting against harmful conduct of the former employee must be weighed against both the reasonableness of the restraint imposed on the former employee and the public interest.” All Stainless, Inc., 364 Mass. at 778. To determine the reasonableness of a covenant, where, as here, a covenant not to compete arose out of both the sale of a business and an employment relationship, it is necessary to consider to which the covenant is primarily related because “noncompetition covenants arising out of the sale of a business [are] enforced more literally than such covenants arising out of [the] employer-employee relationship." Alexander & Alexander, Inc., 21 Mass.App.Ct. at 496 (stating “[i]t is not at all unusual for the seller of a business to join the new enterprise in an employment capacity”). “In the former situation there is more likely to be equal bargaining power between the parties; the proceeds of the sale generally enable the seller to support himself temporarily without the immediate practical need to enter into competition with his former business; and a seller is usually paid a premium for agreeing not to compete with the buyer.” Alexander & Alexander, Inc., 21 Mass.App.Ct. at 496. In consideration of the following facts, this court concludes that the covenant not to compete was ancillary to the asset purchase agreement: the covenant not to compete was entered into on the same day as the asset purchase agreement, the covenant states that the asset purchase agreement is consideration for the covenant, and the asset purchase agreement does not provide for the protection of the good will implicitly transferred. The sale of a business standard will, therefore, be applied.
Looking first to the scope of the agreement, the analysis is two-fold; the nature of the restrictions on Allard and the geographic area in which he is subject to those restrictions. With regard to the nature of the restrictions, this court rejects a strict interpretation of paragraph 1, section a, of the covenant, which provides that for a period of ten years Allard will not, within Brakemaster’s May 2005 customer base or within a twenty-mile radius of the Brakemaster stores, “[e]ngage in, or have any ownership interest in any business, firm partnership, corporation or other legal entity that engages in, the business conducted by [GPC], including, but not limited to the wholesale or retail sale of motor vehicle parts and related accessories, or any other activity that is the same or similar to, or competitive with, any business activity engaged in by [GPC], as an individual, partner, shareholder, director, officer, employee, sales person, counterper-son, clerk, principal, agent, consultant, or in any other relationship or capacity whatsoever.” Thie effect of a strict interpretation of this clause would be to prohibit *24 Allard from working for any corporation in the business of selling auto parts, no matter how large the corporation, merely because that corporation did business in the Worcester area, without regard for the region in which Allard worked or the nature of his employment. After consideration of the covenant language, this court concludes that enforcement of the contract to allow for such an extreme limitation of Allard’s opportunity to be employed by another motor vehicle parts company is not in the spirit of the covenant. Moreover, it provides for a greater restriction on Allard than is required to protect GPC’s legitimate business interests and is so broad as to be contrary to the public interest. The covenant is modified to prohibit Allard from engaging in the wholesale or retail sale of motor vehicle parts and related accessories, or any other activity that is the same or similar to, or competitive with, any business activity engaged in by GPC, within the Brakemaster stores’ May 2005 customer base or within a twenty-mile radius of the Brakemaster stores, but to allow Allard to be employed by or have an ownership interest in a business, Arm, partnership, corporation or other legal entity that does business in this region. Paragraph 1, section a, of the covenant is otherwise unmodified.
This court also rejects GPC’s contention that the covenant not to compete prohibits Allard from “otherwise using the skills he has developed over the years.” The unambiguous language of paragraph 1, section c, of the covenant prohibits Allard from using, divulging, or disclosing “customer lists, trade secrets, methods of operations, records, statistics, or other information regarding the [Brakemaster stores].” The court will enforce the language of the covenant, but finds that it is neither a reasonable interpretation of the language or in the public interest to interpret this provision as prohibiting Allard from making use of all of his “skills he has developed over the years.”
The geographic scope of the covenant not to compete, on the other hand, is reasonable. A twenty-mile radius is not so onerous in this era of the automobile as to limit Allard’s employment opportunities and the undisputed evidence of the range of GPC’s customers does not lead this court to believe that a twenty-mile radius from the Brakemaster stores is overreaching. See Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 644 (2004), cases cited.
With regard to the period of time for which the covenant will be enforced, it is reasonable to enforce the covenant, as modified above, for five years. The ten-year duration of the covenant is modified in consideration of the following: while Allard had more bargaining power than a mere employee and did at some point consult legal counsel, Allard was not fully represented by counsel at the time when he entered into this covenant, see Alexander & Alexander, Inc., 21 Mass.App.Ct. at 496; GPC drafted the asset purchase agreement and covenant not to compete, was represented by counsel, and had experience in purchasing businesses and entering into covenants not to compete, see id.; the work that Allard did for GPC and the work that he later did for Autopart was not unique, see Kroeger v. Stop & Shop Companies, Inc., 13 Mass.App.Ct. 310, 317 (1982), and Williston on Contracts §13:4 (4th ed. 1995), and the asset purchase agreement did not indicate a specific sum of money paid to Allard for the good will of the Brakemaster stores or for his agreement to enter into the covenant not to compete, Alexander & Alexander, Inc., 21 Mass.App.Ct. at 496 (noting that purchasers often pay a premium for a business’s good will). Moreover, a ten-year duration so limits Allard’s employment opportunities as to be against public policy. In finding that the covenant not to compete should be enforced for any period of time, the court notes that the defendants’ claim that Allard was coerced into signing the covenant is not supported by any admissible evidence.
For the reasons stated above, the covenant not to compete is modified to comply with the decisions of this court.
B. Summary Judgment on Plaintiffs Four-Count Complaint
The defendants now move for summary judgment on GPC’s four-count complaint, alleging breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with a contractual relationship, and violation of G.L.c. 93A. Pursuant to Mass.R.Civ.P. 56(c), summary judgment is proper when “there is no genuine issue of material fact, and where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.” Opara v. Massachusetts Mut Life Ins. Co., 441 Mass. 539, 544 (2004), citing Mass.R.Civ.P. 56(c). “The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “A party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
1. Breach of Contract
The defendants move for summaryjudgment on the grounds that, to the extent that the covenant not to compete should be enforced, Allard’s employment at Autopart did not constitute a breach of contract and that Allard’s interactions with GPC customers did not constitute a breach of contract. For the reasons stated *25 below, GPC has failed to offer sufficient evidence upon which a reasonable juiy could find a breach of contract. Judgment will be granted in favor of the defendants.
This court interprets unambiguous contract language as a matter of law. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). “A contract is to be construed to give reasonable effect to each of its provisions.” J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986). “[EJveiy phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties.” Id. (internal citation and quotation omitted).
For the reasons explained in the foregoing section, paragraph 1, section a, of the covenant not to compete is modified so as to allow Allard to be employed by a company that does business in the Worcester area so long as he is not doing business within the geographic area set forth in the covenant not to compete. Therefore, Allard’s merely being employed by Autopart does not constitute a breach of contract.
GPC’s claim that Allard’s contact with customers of GPC, with whom Allard worked when he was an employee of GPC and when he was the owner of the Brakemaster stores, constitutes a breach of contract is based on paragraph 1, section c, of the covenant not to compete, which states that Allard may not: “use, divulge or disclose to any persons, except [GPC] and its authorized officers and employees, customer lists, trade secret, methods of operations, records, statistics, or other information regarding the [Brakemaster stores], nor in any manner directly or indirectly aid or be a party to any acts the effect of which would tend to divert, diminish or prejudice the good will or business of [GPC].”
The facts with regard to Allard’s contact with GPC’s customers during the fall of 2005, at which point Allard was an employee of Autopart, are set forth in full in the statement of facts above. In relevant part, the uncontested evidence is that Allard’s contact with these customers included having auto repair work done on a vehicle owned by Autopart, but not visibly identifiable as such, and discussing open GPC accounts with the customers, as well as purely social interactions. The covenant not to compete does not prohibit all contact with GPC customers or former Brakemaster customers. Rather, it prohibits the diversion or diminution, intentional or unintentional, of GPC’s good will or business. In consideration of the language of the covenant not to compete, and the notable absence of a no-contact clause, this court concludes that simply to have contact with GPC customers, even if the customers know that he has left GPC because he was unhappy with his employment there and even if his contact with these customers built up their good will towards him, does not constitute a breach of the covenant not to compete. Moreover, it is not a diversion or diminution of GPC’s good will or business for Allard to discuss an outstanding account receivable with a GPC customer, particularly in light of the provision of the asset purchase agreement that vests in Allard a financial interest in the collection of those accounts. Considering the evidence in the light most favorable to GPC, GPC has failed to offer any evidence that Allard’s contact with these customers constituted the diversion or diminution of GPC’s good will or business. Furthermore, GPC has not submitted any evidence to countervail the affidavits of Jerry Brooks, Keith Leo, and Bob Sainsbuiy, in which all three business owners attest that Allard did not solicit their business on behalf of Autopart or in any manner discourage them from working with GPC.
Similarly, the covenant not to compete does not prohibit Allard from having any contact with Costello merely because Costello’s employment at Autopart includes selling Autopart products in the Worcester region. There is no evidence that Allard disclosed customer lists, trade secret, methods of operations, records, statistics, or other information regarding the Brakemaster stores. Therefore, GPC has no reasonable expectation of proving a violation of this provision of the covenant not to compete.
For the reasons stated above, this court concludes that GPC has no reasonable expectation of proving that Allard’s conduct constituted a breach of the covenant not to compete. The defendants’ motion for summary judgment on Count One will be ALLOWED.
2. Implied Covenant of Good Faith and Fair Dealing
For the same reasons discussed with regard to Count One, GPC has no reasonable expectation of proving that Allard breached the implied covenant of good faith and fair dealing that arose out of the sale of Brakemaster to GPC. The defendants’ motion for summary judgment on Count Two will be ALLOWED.
3. Tortious Interference with a Contractual Relationship or Intentional Interference with Advantageous Relation
In Count Three of the complaint, GPC alleges Au-topart tortiously interfered with a contractual relationship or intentionally interfered with an advantageous relationship.
As GPC has failed to establish evidence upon which a reasonable jury could find a breach of contract, the tortious interference with a contractual relationship claim fails. See United Truck Leasing Corp. v. Geltman, 26 Mass.App.Ct. 847, 852 (1989), rev’d on other grounds, 406 Mass. 811 (1990) (“[a] plaintiff is entitled to recover against a defendant for procuring a breach of contract if he establishes that (1) he had an existing contract with a third party, (2) the defendant knew *26 that fact, (3) the defendant induced the other person to break the contract and (4) damage was incurred”), and Restatement (Second) of Torts §766 (“One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract").
To succeed on a claim of intentional interference with an advantageous relationship, a plaintiff must prove that “(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant’s interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.” Blackstone v. Cashman, 448 Mass. 255, 260 (2007), citing Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). The summary judgment record is devoid of any evidence on which a reasonable jury could find that Autopart’s conduct in hiring Allard was improper in motive or means.
For the reasons stated above, the defendants’ motion for summary judgment on Count Three will be ALLOWED.
4. Violation of G.L.c. 93A
In Count Four, GPC alleges that Autopart violated G.L.c. 93A, §11. General Laws c. 93A, §11 created a cause of action for “(a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice.” The Appeals Court recently considered whether a corporation’s working with the competitor of a staffing firm that it had worked with in the past, where the owner of the competing firm had entered into a covenant not to compete with the other firm, supports a claim under G.L.c. 93A based on the argument that by doing so the competing employer “facilitated” the employee’s breach of contract. Synergistics Technology, Inc. v. Putnam Investments, LLC, No. 08-P-1135 (July 23, 2009). The Appeals Court held that as a matter of law the corporation’s actions were neither unfair nor deceptive. Id. The Court explained, “G.L.c. 93A does not create any obligation on [an employer’s] part to shun [a perspective employee] simply because [that party] had an agreement with [another employer] or because they might become involved in a dispute over [the employee’s] contractual freedom.” Id. In other words, “[Autopart] was not required to interpret the rights and obligations of parties to an agreement to which it was not itself a party and with which it had not interfered, and then act in the role of enforcer." Id. Applying the Appeals Court’s decision, and in consideration of this court’s granting summary judgment for the defendants on GPC’s contract and torts claims and that Autopart had a legitimate business interest in hiring a sales person with experience in the sale of domestic motor vehicle parts, this court concludes that, taking the facts in the light most favorable to GPC, as a matter of law Autopart’s conduct does not constitute a violation of G.L.c. 93A, §11. Therefore, the defendants’ motion for summary judgment on Count Four will be ALLOWED.
II. Plaintiffs Motion for Summary Judgment on Abuse of Process Counterclaim
As discussed previously, the plain meaning of the covenant not to compete prohibited Allard from working for a corporation that did business within twenty miles of the Brakemaster stores. While this court will not enforce this provision of the covenant, as it is not reasonable or in the public interest to do so, it was not abuse of process for the plaintiff to try to enforce the covenant not to compete to its fullest extent. GPC’s motion for summary judgment on the defendants’ abuse of process claim will be ALLOWED.
ORDER
It is hereby ORDERED that summary judgment enter for the defendants Edward Allard and Autopart International, Inc. on all counts of the plaintiff Genuine Parts Company’s complaint.
It is hereby ORDERED that summary judgment enter for the plaintiff Genuine Parts Company on the defendant Edward Allard’s counterclaim for abuse of process.
It is hereby ORDERED, pursuant to the defendant Edward Allard’s counterclaim for declaratory relief as to the covenant, that the “Covenant Not To Compete” entered into on May 26, 2005, be MODIFIED in accordance with the foregoing opinion.
Accordingly, for a period of five years, beginning June 1,2005, Edward Allard is prohibited from engaging in the wholesale or retail sale of motor vehicle parts and related accessories, or any other activity that is the same or similar to, or competitive with, any business activity engaged in by GPC, within the Brakemas-ter stores’ May 2005 customer base or within a twenty-mile radius of the Brakemaster stores. Edward Allard may be employed by or have an ownership interest in a business, firm, partnership, corporation or other legal entity that engages in the business conducted by GPC within the Brakemaster stores’ May 2005 customer base or within a twenty-mile radius of the Brakemaster stores.